**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **DAVID M RATHMANN, individually, and on behalf of a class of similarly situated individuals** | § | |
| **_Plaintiff_** | § | |
| | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:21-cv-610** |
| | § | |
| **FORD MOTOR COMPANY** | § | |
| **_Defendant_** | § | |

---

### ORIGINAL CLASS ACTION COMPLAINT

---

David M. Rathmann ("Plaintiff" or "David"), individually and on behalf of all others similarly situated ("the Class" or "Class members"), files this suit against Defendant Ford Motor Company ("Ford" or "Defendant"). In support thereof, Plaintiff states as follows:

### I.    INTRODUCTION

1.    Beginning in 2019, Ford sold or leased thousands of 2020 model year Ford F-350 pickup trucks with the 6.7L Diesel Engine, Single Rear Wheels (SRW), 4x4, Crew Cab, Long Box with either the 12k or 12.4k Gross Vehicle Weight Ratings (GVWR), which were designed, manufactured, marketed, distributed, sold, warranted, and serviced by Ford (collectively, the "Class Vehicles" or "Vehicles"). These trucks were purchased or leased by unsuspecting consumers—consumers who relied on Ford's representations regarding the attributes of the Class Vehicles and specifically purchased these trucks because of their towing and hauling capacity.

2.    These trucks were advertised as having "Best in Class" towing capacity and were specifically marketed to consumers shopping for trucks capable of towing heavy loads. These trucks were also sold and/or leased with three sets of specifications (two labels and a separate

document) designed to inform the consumer of the Vehicles' various payload and towing capacities: (1) the **_Tire and Loading Information Label_**, which lists the Vehicles' payload capacity; (2) the **_Safety Certification Label_**, which states the Vehicles' Accessory Reserve Capacity (ARC) values; and (3) the **_Truck Camper Loading Documentation_**, which states the Vehicles' weight values. But each of these labels overstated the actual specifications of the Vehicle (collectively, the "Misrepresentations"). *See* NHTSA Part 573 Safety Recall Report 21V-087.[1] In fact, if the Class Vehicles are loaded to the payload stated on the TREAD label, the Class Vehicles will exceed the Gross Vehicle Weight Rating (GVWR) or Gross Axle Weight Rating (GAWR) thus overloading the Class Vehicles, making them unsafe to drive, and increasing the risk of an accident. In other words, by using the Vehicles for the very purpose for which they were designed—superior towing and hauling—Ford's customers (*i.e.*, the Class members) experience not only increased wear and tear on their vehicle, but also an increased risk of dangerous accidents.

3.      The Misrepresentations are material. Without the stated payload capacity, the Class Vehicles are substantially less valuable. Moreover, owners/lessees of the Vehicles—who purchased Class Vehicles specifically based on the stated towing capacity—must spend significant money to replace their Vehicle with one that has the load weight capacity and payload capacity the Class Vehicles' were originally, incorrectly stated to have. Had Ford disclosed the actual payload and load weight capacity, Plaintiff and the Class members would not have purchased/leased their vehicles or would have paid less for them.

4.      What is worse, Ford knew the truth about the Class Vehicles' actual load weight and payload capacities long before it informed consumers. Ford became aware of its Misrepresentations impacting all Class Vehicles as early as September 4, 2020 (if not earlier).

---

[1] *Available at* https://static.nhtsa.gov/odi/rcl/2021/RCLRPT-21V087-3211.PDF.

Despite knowing about its Misrepresentations, and knowing about the risk of increased wear and tear and dangerous accidents this misinformation posed to Ford's customers, Ford waited **_until March 2021—a full six months_**—before it notified owners/lessees, including new purchasers/lessees, of the inaccurate labels. *See* NHTSA Part 573 Safety Recall Report 21V-087.[2]

5.      Ford has exclusive knowledge of, and has been in exclusive possession of, information pertaining to its Misrepresentations, which were material to Plaintiff and Class members, who could not reasonably know the truth about the Class Vehicles' actual payload and load weight capacities. Ford did not disclose the actual payload and load weight capacities of the Class Vehicles to purchasers or lessees, like Plaintiff, at the point of purchase or through advertisements. In fact, from the beginning and even for six months after discovering Ford's false labeling, Ford did the opposite: it continued to advertise, market, and incorrectly represent the Class Vehicles as having more weight and towing capacity than legally permitted or safe for the Class Vehicles to have. *See* 49 C.F.R. § 571.110, S4.3; 49 C.F.R. § 567, *et seq*. Had Ford provided truthful and accurate information to purchasers, like Plaintiff and the other Class members, such disclosures would have influenced their purchase decisions, including the purchase price they were willing to pay and whether to make the purchase at all. Under all circumstances, Ford had a duty to disclose accurate information regarding the Vehicles' towing capacity at the point of sale of the Class Vehicles. Ford's failure to do so presents breach of express warranty, breach of the implied warranty of merchantability, violations of the Texas Deceptive Trade Practices Act ("DTPA"), violation of the Magnuson-Moss Warranty Act, common law fraud, and negligent misrepresentation.

---

[2] *See* supra note 1.

6.     Ford's mislabeling presents a safety risk to riders when the Class Vehicles are overloaded—in other words, loaded in accordance with the Class Vehicles' labeling, but in fact, *over*loaded according to the Class Vehicles' actual capacity. The inaccurate labels render the Class Vehicles unfit for their ordinary use of providing safe and reliable transportation. As such, the Misrepresentations present a breach of the implied warranty of merchantability. Moreover, the Misrepresentations prevent Class members from using the Class Vehicles for their intended purpose: to tow or carry the weight the Class Vehicles were marketed and advertised for and as stated falsely and incorrectly on the Vehicles' labels.

7.     As a direct and proximate result of Ford's Misrepresentations, Plaintiff and Class members: (1) purchased or leased Vehicles they would not have otherwise purchased or leased; (2) overpaid for the Class Vehicles because the accurate towing capacity significantly diminishes the value of the Vehicles; (3) have Vehicles that are unsafe to drive and unfit for their ordinary use when loaded to the incorrect, overstated capacity on the labels; (4) have Vehicles that are not fit for their ordinary use because their load capacity is significantly less than as stated on the Vehicles' stickers and as marketed and advertised by Ford; (5) have expended, or must now expend, significant money to repair their Vehicles due to accelerated wear and tear; and (6) have expended, or must now expend, significant money to replace their Vehicles with a vehicle that has the payload capacity that the Class Vehicles were supposed to have.

8.     Consequently, Plaintiff and Class members have suffered ascertainable losses and actual damages. Accordingly, Plaintiff and Class members seek, *inter alia*, actual damages, consequential damages, nominal damages, statutory penalties, attorneys' fees, litigation expenses, and/or costs of suit as the result of Ford's wrongful actions as more fully described herein.

## II.  PARTIES

9.      Plaintiff David M. Rathmann is an individual residing in Travis County, Texas and may be contacted through his undersigned counsel. On or about September 20, 2020, Mr. Rathmann purchased a new 2020 F-Super Duty F350 truck (VIN: 1FT8W3BT3LEE19249) for approximately $67,000 from Sewell Ford in Odessa, Texas.

10.     Defendant Ford Motor Company is a publicly traded corporation organized under the laws of the State of Delaware with its principal place of business at One American Road, Dearborn, Michigan 48126. Defendant can be served with process through its agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

11.     Ford, through its various entities, designs, manufactures, distributes, and sells Ford-brand automobiles in this District and multiple other locations in the United States and worldwide. Ford and/or its agents designed and manufactured the Class Vehicles. Ford also developed and disseminated the materially misrepresentative manuals, labels, advertisements, and other intentionally unreasonable and deceptive promotional materials related to the Class Vehicles. Ford also designed advertising material that it sent to Ford dealerships for the purpose of having dealers distribute such materials to consumers, and Ford authorized dealers to communicate with consumers about the performance of the Class Vehicles.

## III.  JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. Subject-matter jurisdiction also arises under the Magnuson-Moss

Warranty claims asserted under 15 U.S.C. § 2301, *et seq.* This court has supplemental jurisdiction over any non-class, state-law claims pursuant to 28 U.S.C. § 1367.

13.     This Court has specific personal jurisdiction over Defendant because it is registered to conduct business in Texas, has purposefully availed itself of the benefits and protections of the State of Texas by continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within Texas, and intentionally and purposefully placing the Class Vehicles into the stream of commerce within the districts of Texas and throughout the United States with the expectation and intent that they would be purchased by consumers. Moreover, Plaintiff's causes of action all arise out of Defendant's contacts with the State of Texas.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant transacts business in this District, is subject to personal jurisdiction in this District, and therefore is deemed to be a citizen of this District. Additionally, there are one or more authorized Ford dealers within this District, including the dealership from which Plaintiff purchased his Vehicle, and Ford has advertised in this District and has received substantial revenue and profits from their sales and/or leasing of the Class Vehicles in this District. Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, at least in part, within this District.

## IV.  <u>MISNOMER/ALTER-EGO</u>

15.     In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer," and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## V.  **RESPONDEAT SUPERIOR**

16.     Ford is legally responsible to Plaintiff and Class members for the acts and omissions of its employees, agents, servants, and representatives under the legal doctrines of respondeat superior, agency, and/or ostensible agency. Thus, Ford is vicariously liable for all wrongful and illegal acts, omissions, and conduct of its employees, agents, servants, and representatives.

## VI.  **FACTUAL ALLEGATIONS**

### A.   THE CLASS VEHICLES

17.     In or around October 2019, Ford released its new 2020 model F-Super Duty F350 truck. Ford advertised, marketed, offered for sale, sold, offered for lease, leased, and distributed about 9,979 potential units of this model. This truck was advertised to be "the Next Generation of Tough," and to have "Best-in-Class" payload and towing capacity.

18.     A vehicle's payload (the amount of weight that can be added to a vehicle's cargo area in addition to its empty weight) is measured by gross vehicle weight ratings (GVWR) and gross axle weight ratings (GAWR), and those ratings have a direct correlation to a vehicle's towing capacity (the maximum weight that a truck can tow). From May 2019, when Ford began manufacturing this line of Vehicles, until March 2021, when Ford finally issued a recall, for every one of the 9,979 Vehicles it manufactured, Ford misrepresented the Vehicles' towing and payload capacities as stated on the Tire and Loading Information Labels, Safety Certification Labels, and Truck Camper Loading Documentation.

19.     Vehicles with a GVWR of 10,000 pounds or less, such as the Class Vehicles, are required by federal law to display a Tire and Loading Information Label (*see* 49 C.F.R. § 571.110) and a Safety Certification Label (*see* 49 C.F.R. § 567, *et seq*.) on the vehicle itself. Commonly found on the driver's doorjamb, these labels allow users to confirm critical vehicle capacities and

original equipment tire information, so they know if the vehicle's capabilities are sufficient for their intended use and so they can safely operate the vehicle by not overloading it.

20.     If vehicle owners are misled and the information provided by these labels is incorrect, false, or inaccurate, their vehicles risk being overworked and overloaded—thereby, causing component wear or failure—which can make drivers lose control of the vehicle, resulting in an accident. In fact, the accuracy of this placard is so integral that when weight-adding modifications to vehicles are made before initial sales, the vehicle dealers must affix a Load Carrying Capacity Modification Label that specifies how much these additions have reduced the car's remaining load capacity.

**B.  FORD SOLD MISLABELED VEHICLES WELL AFTER DISCOVERING THE MISREPRESENTATIONS**

21.     On or about September 4, 2020, Ford discovered that it had mislabeled the Class Vehicles during an annual vehicle audit of the 2020 Model Year F-350s. Nearly two weeks later, on or about September 17, 2020, the topic was brought to Ford's Critical Concern Review Group for review. For the next five months, Ford reviewed the problem and determined that the payload capacities printed on each unit's TREAD label overstated the vehicle weight capacity by anywhere from 78 to 900 pounds. During this five-month testing period, Ford confirmed that the Vehicles' various components—including the tires, springs, and brakes—could not support the higher payload capacities represented on the Tire and Loading Information Label, Safety Certification Label, and Truck Camper Loading Documentation. Based on the data from this five-month testing period, Ford ultimately concluded that the Class Vehicles could not be recertified at the original stated payload capacities.

22.     On or about February 11, 2021, Ford's Field Review Committee approved a field action. However, even at that time, Ford had neither instructed, nor informed, its dealers of the

Misrepresentations and, thus, the Class Vehicles continued to be marketed, sold, and/or leased to consumers across the country.

C.   FORD ISSUES A RECALL FOR THE CLASS VEHICLES

23.     On February 18, 2021, Ford filed a Safety Recall Report (the "Recall") with the National Highway Traffic Safety Administration ("NHTSA"), estimating that 100% of the 9,979 2020 Ford F-Super Duty: F350 Vehicles were mislabeled and, thus, misrepresented the Vehicles' payload and towing capacities. Specifically, the Recall Report described the Misrepresentations as follows: overstated payload and towing capacity values on the Class Vehicles' Tire and Loading Information (TREAD) Label, overstated Accessory Reserve Capacity (ARC) values on the Safety Certification Label, and overstated weight values on the Truck Camper Loading Documentation. *See* NHTSA Part 573 Safety Recall Report 21V-087.[3]

24.     The Recall Report further explains that, because of these Misrepresentations, if the Class Vehicles are loaded to the payload stated on the TREAD label, the vehicles may exceed the Gross Vehicle Weight Rating (GVWR) or Gross Axle Weight Rating (GAWR), thus overloading the Vehicle—preventing the Vehicles from being used for their intended purpose, limiting the Vehicles' towing and payload capacity, and potentially making them unsafe to drive. To that end, the Safety Recall Report specifically noted that "[i]f the vehicle is loaded to the payload value stated on the TREAD label . . . [t]his may result in . . . suspension overload and increased stopping distance, which could increase the risk of a vehicle crash." *Id.*

25.     The only remedy Ford made available under the Recall was to replace the Tire and Loading Information Label, Safety Certification Label, and Truck Camper Loading

---

[3] *See* supra note 1.

Documentation. In other words, Ford would supply purchasers/lessors of the Class Vehicles with a new sticker, and nothing more.

26.     On or about February 19, 2021, Ford notified all of its dealers in the United States of the Recall Report and informed them of the brief plan for replacing the Vehicles' labels and document as its sole remedy. It also instructed the dealers—***six months*** after becoming aware of the Misrepresentations—not to deliver any Vehicles involved in the Recall and that delivering a Vehicle without completing the recall service could result in a civil penalty of $21,000 per vehicle.

27.     On February 24, 2021, Ford sent a second notification to its dealers with further details for the replacement of the Vehicles' Tire and Loading Information Label, Safety Certification Label, and Truck Camper Loading Documentation. Further, despite its admission that the Class Vehicles could not be recertified at the stated original payload capacities, this second notification letter stated affirmatively that no refunds or repairs outside Ford's standard warranties would be approved under the Recall.

28.     Finally, in or about late March 2021, Ford began to notify owners and lessees of the Vehicles' mislabeling.

**D.   DAVID'S MISLABELED VEHICLE**

29.     On or about September 20, 2020, Plaintiff, David Rathman, purchased a new 2020 F-Super Duty F350 truck (VIN: 1FT8W3BT3LEE19249) from Sewell Ford in Odessa, Texas for approximately $67,000.

30.     David purchased his new Ford truck specifically because it had the ability to tow RV trailers. In fact, at the time of purchase, David's primary reason for investing in a new F-Super Duty F350 truck was because of its payload and towing capacity. At the time, the F-Super Duty F-350 truck had the most stated payload capacity of any single rear-wheel truck on the market. David's decision to ultimately purchase his truck and specific trim level was based on the fact it

had the sufficient payload capacity to tow the RV trailers David wanted to purchase, while keeping his family safe. David specifically discussed his reasons for purchasing the vehicle with employees at the Sewell Ford Dealership in Odessa, including the salesperson that assisted him in his decision to purchase his vehicle.

31.     Although Ford knew about the Vehicles' false labels since September 2020, Ford did not notify David of its Misrepresentations until late March 2021. During those intervening six months, David drove his new Ford truck, and used it to tow RV trailers just as he planned.

32.     Specifically, at the time of his purchase, David's Vehicle's Tire and Loading Information Label incorrectly and falsely overstated the truck's payload capacity as 4,576 pounds, as seen below:



However, on or about May 19, 2021, as the first part of its sole remedy under the Recall, Ford provided David with a new Tire and Loading Information Label reflecting that the payload capacity was in fact 4,237 pounds, as seen below:



33.     Similarly, at the time of his purchase, David's Vehicle's Safety Certification Label incorrectly and falsely overstated the Front Axle Accessory Reserve Capacity as 926 pounds and the Total Accessory Reserve Capacity as 1,141 pounds, as indicated on the lower right-hand corner of the Safety Certification Label below:



However, on or about May 19, 2021, as the second part of its sole remedy under the Recall, Ford provided David with a new Safety Certification Label reflecting that the Front Axle Accessory Reserve Capacity was in fact 834 pounds and the Total Accessory Reserve Capacity was actually 803 pounds, as indicated on the lower right-hand corner of the new Safety Certification Label below:



34.   Lastly, on or about May 19, 2021, as the third and final part of its sole remedy under the Recall, Ford provided David with a new Truck Camper Loading Document reflecting the true Cargo Weight Rating of David's Vehicle of 3,305 pounds, as seen below:

35.   David did not know and was never informed by Ford prior to purchasing his Class Vehicle that its payload and load weight capacities were misstated.

36.   Had Ford disclosed its knowledge of the Misrepresentations and the fact that it posed a safety concern when David purchased his 2020 F-Super Duty F350 truck, David would have seen such disclosures and been made aware of them. Ford's omissions and misrepresentations were material to David. Like all members of the putative class, David would

not have purchased his truck or would not have paid the purchase price charged by Ford had he known about the Misrepresentations.

## VII. <u>CLASS ACTION ALLEGATIONS</u>

37.     Plaintiff brings this lawsuit as a class action on behalf of himself and all other similarly situated individuals as members of the proposed Plaintiff Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

38.     **<u>Definition of the Proposed Class</u>**. Plaintiff brings suit on behalf of the following Class:

> **All individuals in the United States who, prior to March 2021, purchased or leased any 2020 Ford F-Super Duty: F350 configured with the 6.7L Diesel Engine, Single Rear Wheels (SRW), 4x4, Crew Cab, Long Box, and either the 12k or 12.4k Gross Vehicle Weight Ratings (GVWR).**
>
> **The following persons are excluded from the Class: (1) the judge(s) assigned to this case and his or her staff; (2) governmental entities; (3) any Defendant and its affiliates; (4) persons adjudged to be bankrupt; and (5) persons who previously released Defendant of the claims raised by this case. Defendant in this action and any entity in which the Defendant has a controlling interest, any employees, officers, or directors of Defendant, and the legal representatives, heirs, successors, and assigns.[4]**

39.     **<u>Numerosity</u>**: Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and to the Court. The Class members are readily identifiable from information and records in Ford's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

---

[4] Plaintiff reserves the right to amend this class definition at any time prior to trial.

40.     **Typicality**: Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Ford with false and incorrect information regarding the Class Vehicles. The representative Plaintiff, like Class members, has been damaged by Ford's misconduct in that he has incurred or will incur the cost of replacing the Vehicle and/or the loss of the diminished value of the Vehicle. Furthermore, the factual bases of Ford's misconduct are common to all Class members and represent a common thread resulting in injury to all Class members.

41.     **Commonality**: There are numerous questions of law and fact common to Plaintiff and the Class members that predominate over any question affecting only individual Class members. These common legal and factual issues include the following:

a.   Whether Ford engaged in the misconduct alleged herein;

b.   Whether the Class Vehicles were mislabeled relating to the overstatement of payload capacity, accessory reserve capacity, and weight values;

c.   Whether the false labels constitute an unreasonable safety risk;

d.   Whether the inaccurate labels are such that they render the Class Vehicles not fit for their ordinary purpose;

e.   Whether Ford knew about the inaccurate labels and, if so, how long Ford has known of the Misrepresentations;

f.   Whether Ford's Misrepresentations, overstating and providing incorrect values for the payload capacity, accessory reserve capacity, and weight values, constitute material facts;

g.   Whether Ford omitted material facts about the payload, weight, and towing capabilities of the Class Vehicles;

h.  Whether Ford has a duty to disclose the Misrepresentations to Plaintiff and Class members;

i.  Whether Ford knew or reasonably should have known of the Misrepresentations before it sold and leased the Class Vehicles to Plaintiff and Class members;

j.  Whether Plaintiff and other Class members overpaid for their vehicles at the point of sale;

k.  Whether Ford should be financially responsible for the costs and expenses of replacing the Class Vehicles and/or compensating Plaintiff and Class members for the diminished value of the Class Vehicles;

l.  Whether Ford induced Plaintiff and Class members to purchase and lease the Class Vehicles based on the Misrepresentations; and

m.  Whether Plaintiff and other Class members are entitled to damages and other monetary relief, and, if so, for what amount.

42.  **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect actions, and Plaintiff intends to prosecute this action vigorously.

43.  **Predominance and Superiority**: Plaintiff and the Class members have all suffered and will continue to suffer harm and damage as a result of Ford's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class members' claims, it is likely that only a few Class

members could afford to seek legal redress for Ford's misconduct. Absent a class action, Class members will continue to incur damages. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants will promote consistency and efficiency of adjudication.

44.     In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2) because:

a.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Ford;

b.  The prosecution of separate actions by individual members of the Class would create a risk of adjudication as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

### VIII.   CLAIMS FOR RELIEF/CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
### (Tex. Bus. & Com. Code §§ 2.316 and 2A.210)

45.     The previous factual statements and allegations are incorporated by reference.

46.     Plaintiff brings this Count individually and on behalf of the Class against Ford.

47.     As set forth above, Ford made material Misrepresentations of fact to Plaintiff and other Class members. Plaintiff and other Class members relied on these Misrepresentations and are seeking recovery of any and all consequential damages stemming therefrom.

48.     Ford was at all times a "merchant" with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104(A) and 2A.103(a)(2), and a "seller" of motor vehicles under § 2.103(a)(4).

49.     With respect to leases, Ford is and was at all relevant times a "lessor" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

50.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(16).

51.     Ford expressly warranted that the Class Vehicles had certain payload and towing capacities that the Class Vehicles did not have. Specifically, the Class Vehicles bear labels that overstate payload capacity values on the Tire and Loading Information (TREAD) Label, overstate Accessory Reserve Capacity (ARC) values on the Safety Certification Label, and overstate weight values on the Truck Camper Loading Documentation. If the Class Vehicles are loaded to the payload stated on the TREAD label, the Vehicles exceed the Gross Vehicle Weight Rating (GVWR) or Gross Axle Weight Rating (GAWR), thus overloading the Class Vehicles and making them unsafe to drive and increasing the risk of an accident.

52.     Plaintiff and Class members relied upon Ford's representations regarding the Class Vehicles' payload and towing capacities in deciding to purchase and/or lease the Vehicles.

53.     Plaintiff and Class members were and are third-party beneficiaries to Ford's contracts for Ford-certified/authorized retailers who sold and leased the Class Vehicles to Plaintiff and the other Class members.

54.     In addition, or in the alternative, Plaintiff and the other Class members directly relied upon Defendant Ford's advertising as alleged above.

55.     Ford was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the Misrepresentations by letter dated June 11, 2021.

56.     As a direct and proximate result of Ford's breach of its express warranties, Plaintiff and other Class members have been damaged in an amount to be proven at trial.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Tex. Bus. & Com. Code §§ 2.314 and 2A.212)

57.    The previous factual statements and allegations are incorporated by reference.

58.    Plaintiff brings this Count individually and on behalf of the Class against Ford.

59.    As set forth above, Ford made material Misrepresentations of fact to Plaintiff and other Class members. Plaintiff and other Class members relied on these Misrepresentations and are seeking recovery of any and all consequential damages stemming therefrom.

60.    Ford was at all times a "merchant" with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104(A) and 2A.103(a)(2), and a "seller" of motor vehicles under § 2.103(a)(4).

61.    With respect to leases, Ford is and was at all relevant times a "lessor" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

62.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(16).

63.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used is implied by law, pursuant to Tex. Bus. & Com. Code §§ 2.314 and 2A.212.

64.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which the Class Vehicles are used. Specifically, Ford affixed to the Class Vehicles labels representing certain payload and weight capacities. These representations were affirmations of fact.

65.    However, the Vehicles do not conform to these affirmations of fact, because these labels overstate payload capacity values on the Tire and Loading Information (TREAD) Label, overstate Accessory Reserve Capacity (ARC) values on the Safety Certification Label, and overstate weight values on the Truck Camper Loading Documentation. If the Class Vehicles are

loaded to the payload stated on the TREAD label, the Vehicles exceed the Gross Vehicle Weight Rating (GVWR) or Gross Axle Weight Rating (GAWR), thus overloading the Class Vehicles and making them unsafe to drive and increasing the risk of an accident.

66.     It was reasonable to expect that Plaintiff and the Class members would use, consume, or be affected by the Class Vehicles.

67.     Plaintiff and Class members were and are third-party beneficiaries to Ford's contracts for Ford-certified/authorized retailers who sold the Class Vehicles to Plaintiff and the other Class members.

68.     In addition, or in the alternative, Plaintiff and the other Class members directly relied upon Defendant Ford's advertising as alleged above.

69.     Ford was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the Class Vehicles by letter dated June 11, 2021.

70.     As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiff and other Class members have been damaged in an amount to be proven at trial.

### COUNT III
### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECT ACT ("DTPA")
### (Tex. Bus. & Com. Code §§ 17.41, *et seq.*)

71.     The previous factual statements and allegations are incorporated by reference.

72.     Plaintiff asserts this Count individually and on behalf of the Class against Ford.

73.     Plaintiff asserts a claim under the Texas Deceptive Trade Practices-Consumer Protect Act ("DTPA"), which makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46.

74.     Moreover, the breaches of warranties described herein violate the DTPA. Tex. Bus. & Com. Code § 17.50.

75.     Plaintiff is a "consumer" within the meaning of Tex. Bus. & Com. Code § 17.46(4).

76.     Ford engaged in "trade or commerce" within the meaning of Tex. Bus. & Com. Code § 17.46(6) by advertising, offering for sale, selling, and leasing motor vehicles.

77.     The DTPA prohibits "false, misleading, or deceptive acts or services in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46(a). By its acts, omissions, failures, and conduct that are described in the Complaint, Ford has violated Tex. Bus. & Com. Code § 17.46(b)(5), (7), (9), and (24). Ford participated in unfair and deceptive trade practices that violated the DTPA as described herein. In the course of its business, Ford misrepresented the quality of the Class Vehicles and omitted material facts regarding the Class Vehicles payload and towing capacity, for the purpose of inducing Plaintiff and other Class members to purchase the Class Vehicles, and to increase Ford's revenue and profits.

78.     The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiff and other Class members known of the Misrepresentations at the time they purchased their Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

79.     Ford's representations violate subdivisions (b)(5) and (b)(24) of the DTPA in that they constitute representations that particular goods have certain qualities, uses, or benefits when they did not and failed to disclose information about goods or services with the intent to induce Plaintiff and other Class members to enter into transactions that they would not have entered into had the information been disclosed.

80.     Ford knowingly committed these false, misleading, and/or deceptive acts and/or practices and breaches of warranties against Plaintiff and the other Class members, as Ford had actual awareness of the falsity of its Misrepresentations no later than September 4, 2020.

81.     Plaintiff and other Class members relied on Ford's Misrepresentations to their detriment.

82.     Plaintiff and the other Class members were injured and suffered ascertainable injury in fact, and/or actual damages as a proximate result of Ford's conduct in that Plaintiff and the other Class members overpaid for their vehicles, did not receive the benefit of their bargain, and have now purchased vehicles that, if used according to the payload and towing capacities stated on their Vehicles' Tire and Loading Information Label, Safety Certification Label, and Truck Camper Loading Documentation, are susceptible to heightened wear and tear, and are unsafe to drive.

83.     These injuries are the direct and natural consequence of Ford's representations and omissions.

84.     Ford's violations present a continuing risk to Plaintiff as well as the other Class members. Accordingly, Ford is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

85.     Moreover, Ford's conduct as described above and the resulting loss to Plaintiff and the other Class members has necessitated Plaintiff's retention of the attorneys whose names are subscribed to this Complaint. Plaintiff is, therefore, entitled to recover from Ford an additional sum to compensate Plaintiff for a reasonable fee for such attorneys' necessary services in the preparation and prosecution of this action, as well as a reasonable fee for any and all necessary appeals to other courts.

## COUNT IV
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)

86.     The previous factual statements and allegations are incorporated by reference.

87.     Plaintiff brings this Count individually and on behalf of the Class against Ford.

88.     As set forth above, Ford made material Misrepresentations of fact to Plaintiff and other Class members. Plaintiff and other Class members relied on these Misrepresentations and are seeking recovery of any and all consequential damages stemming therefrom.

89.     The Class Vehicles manufactured and sold by Ford are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

90.     Plaintiff and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantors the obligations of their implied warranties.

91.     Ford was a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

92.     Ford provided Plaintiff and other Class members with an implied warranty of merchantability in connection with the purchase or lease of the Class Vehicles, that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Ford warranted that the Class Vehicles were fit for their ordinary purpose as motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

93.     Ford breached its implied warranties, as described in more detail above, and is therefore liable to Plaintiff and the other Class members pursuant to 15 U.S.C. § 2310(d)(1). Specifically, Ford breached its implied warranties by affixing labels to the Vehicles that overstate

payload capacity values on the Tire and Loading Information (TREAD) Label, overstate Accessory Reserve Capacity (ARC) values on the Safety Certification Label, and overstate weight values on the Truck Camper Loading Documentation. If the Class Vehicles are loaded to the payload or towing capacities stated on the Vehicles' Tire and Loading Information Label, Safety Certification Label, or Truck Camper Loading Documentation, then the Vehicles exceed the Gross Vehicle Weight Rating (GVWR) or Gross Axle Weight Rating (GAWR), thus overloading the Class Vehicles and making them unsafe to drive and increasing the risk of an accident.

94. In its capacity as a warrantor, Ford had knowledge of the Misrepresentations made on the labels of the Class Vehicles. Any effort by Ford to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

95. Plaintiff and the other Class members are the intended third-party beneficiaries of contracts between Ford and its dealers, and specifically, of Ford's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranties provided by Ford in connection with the Class Vehicles, which were designed for and intended to benefit consumers.

96. Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Ford notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

97. The amount in controversy of Plaintiff's individual claim meets or exceeds the sum of $25.00. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiff,

individually and on behalf of other Class members, seeks all damages permitted by law, including diminution in value of the Class Vehicles in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiff and the other Class members in connection with the commencement and prosecution of this action.

## COUNT V
## COMMON LAW FRAUD

98.     The previous factual statements and allegations are incorporated by reference.

99.     Plaintiff brings this Count individually and on behalf of the Class against Ford.

100.    As set forth above, Ford made material Misrepresentations of fact to Plaintiff and other Class members. Plaintiff and other Class members relied on these Misrepresentations and are seeking recovery of any and all consequential damages stemming therefrom.

101.    As alleged above, Ford misrepresented the quality of the Class Vehicles and omitted material facts regarding the Class Vehicles' payload and towing capacity, for the purpose of inducing Plaintiff and other Class members to purchase the Class Vehicles, and to increase Ford's revenue and profits.

102.    The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiff and other Class members known of the Misrepresentations at the time they purchased their Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

103.    Ford knowingly committed these false, misleading, and/or deceptive acts and/or practices and breaches of warranties against Plaintiff and the other Class members, as Ford had actual awareness of the Misrepresentations no later than September 4, 2020.

104.    Due to its specific and superior knowledge of the Misrepresentations, and due to its false representations regarding the Class Vehicles' payload and towing capacity, Ford had a duty to disclose to Plaintiff and Class members that their vehicles in fact had lower payload and towing capacities than those stated on the various vehicle labels.

105.    Ford knew that Plaintiff and other Class Members reasonably relied on Ford's false representations and omissions.

106.    Plaintiff and other Class members relied on Ford's representations to their detriment.

107.    Plaintiff and the other Class members were injured and suffered ascertainable injury in fact, and/or actual damages as a proximate result of Ford's conduct in that Plaintiff and the other Class members overpaid for their vehicles, did not receive the benefit of their bargain, and have now purchased vehicles when, if used according to the payload capacities stated on their labels, are susceptible to heightened wear and tear, and are unsafe to drive.

108.    Accordingly, Ford is liable to Plaintiff and the other Class Members in an amount to be proven at trial.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

109.    The previous factual statements and allegations are incorporated by reference.

110.    Plaintiff brings this Count individually and on behalf of the Class against Ford.

111.    As set forth above, Ford made material Misrepresentations of fact to Plaintiff and other Class members. Plaintiff and other Class members relied on these Misrepresentations and are seeking recovery of any and all consequential damages stemming therefrom.

112.    As alleged above, Ford misrepresented the quality of the Class Vehicles and omitted material facts regarding the Class Vehicles' payload and towing capacity, for the purpose of inducing Plaintiff and other Class members to purchase the Class Vehicles, and to increase Ford's revenue and profits.

113.    The facts concealed and omitted by Ford were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiff and other Class members known of the Misrepresentations at the time they purchased their Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

114.    Ford did not use reasonable care in obtaining the information regarding the Class Vehicles' payload and towing capacity, nor did it use reasonable care in communicating that information to consumers.

115.    Ford, as the designer, manufacturer, and seller of the Class Vehicles, had a duty to disclose to Plaintiff and Class members that their vehicles in fact had lower payload and towing capacities than those stated on the various vehicle labels.

116.    Ford knew that Plaintiff and other Class members reasonably relied on Ford's false representations and omissions.

117.    Plaintiff and other Class members relied on Ford's representations to their detriment.

118.   Plaintiff and the other Class members were injured and suffered ascertainable injury in fact, and/or actual damages as a proximate result of Ford's conduct in that Plaintiff and the other Class members overpaid for their vehicles, did not receive the benefit of their bargain, and have now purchased vehicles when, if used according to the payload capacities stated on their labels, are susceptible to heightened wear and tear, and are unsafe to drive.

119.   Accordingly, Ford is liable to Plaintiff and the other Class Members in an amount to be proven at trial.

## IX.   REQUEST FOR JURY TRIAL

120.   Plaintiff, on behalf of himself and all others similarly situated, respectfully demands a trial by jury on all of his claims and causes of action so triable.

## X.   DAMAGES & RELIEF REQUESTED

121.   The previous factual statements and allegations are incorporated by reference.

122.   Defendant's conduct as alleged herein was the proximate cause of Plaintiff's and Class members' damages. Plaintiff and Class members have suffered actual, special, and consequential damages, which include, but are not limited to, diminution of the value of their vehicles, and/or the costs necessary to replace their vehicle.

123.   Plaintiff and Class members are also entitled to recover their reasonable attorneys' fees, costs, and all additional amounts permitted under Tex. Bus. & Com. Code § 17.50.

## XI.   CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff, on behalf of himself and Class members, respectfully requests that Defendant Ford Motor Company be cited to appear and answer, and that upon final hearing, Plaintiff and Class members receive judgment against Ford:

(i)     Certifying the class and appointing Plaintiff and his counsel to represent the Class;

(ii)   Awarding actual damages, consequential damages, nominal damages, and/or statutory damages in excess of the sum of $5,000,000 with interest as provided by law;

(iii)   Awarding exemplary damages to be decided by the trier of facts;

(iv)   Awarding attorneys' fees and costs of suit; and

(v)   Awarding such other and further relief, at law or in equity, to which these Plaintiff and Class members are justly entitled.

Dated: June 14, 2021

**NIX PATTERSON, LLP**

*/s/ Bradley E. Beckworth*
Bradley E. Beckworth (*application for admission forthcoming*)
TX Bar No. 24001710
Jeffrey Angelovich
TX Bar No. 00786988 (*application for admission forthcoming*)
Trey Duck
TX Bar No. 24077234 (*application for admission forthcoming*)
Andrew G. Pate
TX Bar No. 24079111 (*application for admission forthcoming*)
Ross Leonoudakis
TX Bar No. 24087915
Robert "Winn" Cutler
TX Bar No. 24084364
Jessica E. Underwood
TX Bar No. 24093291 (*application for admission forthcoming*)
3600 North Capital of Texas Highway
Suite 350, Building B
Austin Texas, 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
bbeckworth@nixlaw.com
jangelovich@nixlaw.com
tduck@nixlaw.com
dpate@nixlaw.com
ross@nixlaw.com
winn.cutler@nixlaw.com
junderwood@nixlaw.com

Respectfully Submitted,

**PARANJPE MAHADASS RUEMKE LLP**

*/s/ Tej R. Paranjpe*
Tej R. Paranjpe
TX Bar No. 24071829
William N. Haacker
TX Bar No. 24113709
3701 Kirby Drive, Suite 530
Houston, Texas 77098
Telephone: (83) 667-7700
Facsimile: (832) 202-2018
TParanjpe@pmrlaw.com
WHaacker@pmrlaw.com

**DANIELS & TREDENNICK PLLC**

*/s/ Douglas A. Daniels*
Douglas A. Daniels
TX Bar No. 00793579
John F. Luman III
TX Bar No. 00794199
Sabrina R. Tour
TX Bar No. 24093271
6363 Woodway, Suite 700
Houston, Texas 77057
Telephone: (713) 917-0024
Facsimile: (713) 917-0026
doug.daniels@dtlawyers.com
luman@dtlawyers.com
sabrina@dtlawyers.com

*Counsel for Plaintiff*